UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **THRYV, INC.,**<br><br>        Plaintiff,<br><br>v.<br><br>**CLARK SCOTT,**<br><br>        Defendant. | Case No. <u>3:23CV-284-BJB</u><br>*Electronically filed* |

**THRYV, INC.'S COMPLAINT**

Thryv, Inc. ("Thryv") files this Complaint complaining of Clark Scott ("Scott") as follows:

**I.
NATURE OF THE CASE**

1.      After commencing litigation against Thryv in Texas for the alleged breach of contractual relationships with his companies[1], Scott has now taken to the internet with the express intention of harassing Thryv, its Chief Executive Officer Joseph Walsh, Mr. Walsh's wife and family, and Thryv board members based on false claims that Mr. Walsh is exploiting slave ownership through his alleged ownership of a former slave plantation.

2.      Not only are these allegations false, but they are clearly designed to coerce Thryv to concede to Scott's demands for millions in alleged damages in his Texas lawsuit against the company. This is the second time Scott has attempted this strategy of making false comments and

---

[1] *LetsSeeWhatSticks, LLC v. Thryv, Inc.*, Case No. 236-326406-21, pending in the District Court for the 236th Judicial District, Tarrant County, Texas, and in it, LetsSeeWhatSticks, LLC ("LSWS"), a limited liability company owned and controlled by Clark Scott, purports to represent the claims of Hello Earth, another company owned and controlled by Scott, and others in asserting a claim for breach of contract in connection with its participation in Thryv's Affiliate Program (the "LSWS Lawsuit").

statements online to try to influence Thryv's litigation strategy and damage its reputation and customer relationships.

3. Having been enjoined in the previous action filed by Thryv to stop his harassment[2], Scott is now making personal, inflammatory statements about Mr. Walsh's alleged ownership of a former slave plantation and claiming that Thryv customers are supporting what Scott refers to as "tacky" efforts to "make money off" of owning a former slave plantation.[3] On his website, www.plantationmonthly.com, Scott purports to outline Mr. Walsh's family tree and accuses him of continuing a family legacy of owning slave plantations. Scott then insinuates that Thryv's 400,000 customers are supporting the alleged exploitation of slavery by purchasing services from Thryv, which "probably pays Walsh's salary and increases his wealth through Stock and salary," linking to Mr. Walsh's LinkedIn profile, which is maintained by Thryv. (Ex. A).

4. These statements are false and misleading and are part of a pattern and practice of making false claims in order to unlawfully harass and damage Thryv's business interests, employees, and affiliates. Scott should not be permitted to use his website and other public on-line forums to damage the reputation of Thryv in the marketplace.

---

[2] The court in *Thryv, Inc. v. Hello Earth, LLC, and Clark Scott*, Case No. 141-329335-21, in the District Court for the 141st Judicial District, Tarrant County, Texas, a related case to the LSWS Lawsuit, entered a temporary restraining order against Scott ordering him to remove internet posts wherein he falsely claimed that Thryv had failed to comply with SEC disclosure requirements in connection with the LSWS Lawsuit. Scott was also enjoined from threatening the officers and directors of Thryv in connection with these false claims, from making public statements about the business relationship between his company and Thryv, and from publicly making any misrepresentations about Thryv or its business.

[3] It appears that Clark Scott has a pattern and practice of using online harassment against companies with whom he has legal or business disputes. *See AssetMark Financial Holdings, Inc., et al. v. Clark M. Scott, III, et al.*, Civil Action No. 3:22-cv-175-RGJ, in the United States District Court, Western District of Kentucky, Louisville Division.

5. Thryv seeks damages and injunctive relief in connection with Defendant Scott's conduct as described herein.

## II.
## PARTIES

6. Plaintiff Thryv, Inc. is a Delaware corporation with its principal place of business in Tarrant County, Texas.

7. Defendant Clark Scott is an individual residing in Jefferson County, Kentucky, whose home address is 7712 Woodbridge Hill Lane, Prospect, Kentucky 40059. Defendant Scott is the owner of the website found at www.plantationmontly.com, as well as the Twitter, Tumblr, and Instagram accounts established in the name of Plantation Monthly.

## III.
## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different U.S. states and the amount in controversy exceeds $75,000, excluding interest and costs. The court has personal jurisdiction over Defendant because he is a resident of Kentucky and committed a tort, which is the subject of this suit, in whole or in part in Kentucky, by publishing defamatory statements about Thryv and its officers and directors online.

## IV.
## FACTUAL BACKGROUND

9. Thryv is a global software and marketing services company that works with small- to medium-sized businesses, franchises, and agencies to market their businesses through digital and print advertising and promotion. Thryv Holdings, Inc., Thryv's parent company, is a publicly traded company, listed on the NASDAQ as THRY.

10. Defendant Scott has embarked on a campaign of on-line harassment against Thryv and its Chief Executive Officer by repeatedly posting misleading, blatantly false, and harassing posts and comments insinuating that, by doing business with Thryv, its over 400,000 customers are implicitly supporting the exploitation of slave plantation ownership.

11. Defendant's statements are false and misleading and are believed to have been made in order to attempt to influence the outcome of other litigation between the parties.

12. On May 30, 2023, Scott used his Plantation Monthly Instagram account to post the following statements to an Instagram account owned by the wife of Thryv's CEO, Mrs. Walsh:



plantationmonthly Lombardy is our Plantation of the month: https://plantationmonthly.com/
1d  Reply

plantationmonthly Mr Walsh's 2nd Great Grandfather also owned a plantation. Dr. Stephen Newton Chiswell White owned Annington Plantation. White was one of the largest enslavers in the county in 1840, with 43 enslaved persons enumerated in his household by the US census. 1810 thru 1840 census. Plantation ownership Runs in the family I guess?
3d  Reply

plantationmonthly 100+ slaves used to live there. Why do you charge people to have weddings there? A little tacky?
6d  Reply

plantationmonthly https://www.tiktok.com/t/ZTREVpRUS/
6d  1 like  Reply

13. Similar posts were made to the Plantation Monthly accounts on TikTok, Instagram, and Tumblr. (Exs. B-D). Each of these posts links and directs the reader to the Plantation Monthly website, wherein Scott expressly states:

> Are 400,000 small businesses supporting this ?
>
> **CEO and Board member: Joseph Walsh**
> His public company takes in money from over 400,000 small businesses in the United States. Money which probably pays Walsh's salary and increases his wealth through Stock and salary.
> Joe Walsh LinkedIn page
>
> **Opinion and Parody website**
> Just our 2 cents. Former Slave Plantations should be made a historical location for education and remembrance. Not to rent out to rich folks and weddings. But hey, look at every person in his leadership and Board members
> I do not see any black people on this page except for the Stock Photos at the bottom. I guess that would make it easier for a leadership retreat to Joseph Walsh's Plantation.

14. However, Scott's own website acknowledges that the Lombardy Plantation is owned by Lombardy 1669, LLC, not Thryv CEO Joseph Walsh. Further, there is no link between the Lombardy Plantation and Thryv.

15. There is no basis for any claim that by doing business with Thryv, a business is contributing to the alleged ownership of a former slave plantation, as Scott suggests.

16. On his website and in other on-line posts, Scott goes so far as to claim that by doing business with Thryv, businesses are supporting exploitation of former slave plantations. Scott pairs these unfounded and explosive allegations with information about how slaves at nearby plantations were treated, implicitly claiming that the same was true of the slaves at Lombardy Plantation.

17. Significantly, the recorded history of the Lombardy Plantation does not support the claims made by Scott. Instead, real property records show that the African-American community of Unionville, Maryland, which was settled in 1867 by ex-slaves and freed blacks who had fought in the Union Army from 1863-1867 during the Civil War, is located on parcels of land carved out

from the Lombardy Plantation by Ezekiel and Sarah Cowgill, each of which are named on the Plantation Monthly as former plantation owners.[4]

18. The Lombardy Plantation is celebrated for its role in establishing what has been considered the only known hometown founded by formerly-enslaved soldiers who fought in the Civil War.[5] The town of Unionville consists of plots of land that were leased to them by the Cowgills—former owners of Lombardy Plantation—who were known as ardent abolitionists, not slave owners. Attached as Exhibit E is a map of "Lombardy" which reflects the tracts that would ultimately become Unionville.

19. The Cowgills were known for working their Talbot plantations, including Lombardy, with paid labor. After the Civil War ended, the Cowgills gave formerly-enslaved veterans assistance that other landowners refused and leased half-acre parcels from the Lombardy tract to 18 veterans who would come to own the tracts themselves. The Cowgills subsequently sold them a parcel for a school and church. Over time, 49 families came to call Unionville home. Unionville has been described as "an island of black self-determination in a sea of white resentment."

20. While Scott attempts to present the information contained on Plantation Monthly as well researched and accurate, it is far from that. Instead, Scott has designed the website with the express purpose of harassing Thryv by attacking the character of Thryv's CEO, Mr. Walsh, and his family. In order to do so, Scott presents an inaccurate and intentionally incomplete

---

[4] Black History Month: Unionville, Talbot Historical Society, https://talbothistory.org/collections-research/black-history/unionville/;

[5] After the Civil War, African American Veterans Created a Home of their Own: Unionville, 2017 Smithsonian Magazine, https://www.smithsonianmag.com/history/civil-war-african-american-veterans-town-own-unionville-180964398/

recitation of the history of the Lombardy Plantation. All of the information cited above is easily accessed through simple internet searches regarding the history of the Lombardy Plantation.

21. In fact, Scott has gone to more difficult links to apparently track Mr. Walsh's ancestry while ignoring the publicly available information that conflicts with the misrepresentations found on his website.

22. It is based on this intentionally misleading recitation of history and facts that Scott then claims that Thryv, through its CEO, is supporting the exploitation of a former slave plantation.

23. Upon seeing the disparaging posts and comments made by Scott, Thryv has taken steps to remove or block the posts as much as possible.

24. However, it has no way to remove the false and disparaging statements contained on the Plantation Monthly website owned by Scott or his other social media pages.

25. Scott's posts on the Plantation Monthly website and social media pages, along with links to Mr. Walsh's Thryv LinkedIn page, and posts to Mrs. Walsh's social media pages, are expressly designed to damage the company and its executives publicly, ostensibly to gain some sort of litigation advantage in a pending LSWS Lawsuit.

26. In an attempt to avoid liability for these outrageous statements, Scott claims that Plantation Monthly is a "parody website." While some of the statements contained therein might be made in jest or seem funny to Scott, it is clear that he is making serious allegations of exploitation and racial insensitivity against Mr. Walsh and Thryv, based on knowingly false and incomplete recitations of the historical significance of the Lombardy Plantation, and directly connecting those claims to Thryv—a company he is not-so-coincidentally suing.

27. The false and misleading statements and suggestions made by Scott have and will continue to irreparably harm Thryv and its investors as they undermine confidence in the company

and its leadership and negatively impact the willingness of investors to invest in the company and Thryv's share price.

## V.
## FIRST CAUSE OF ACTION –DEFAMATION, LIBEL AND SLANDER

28. Thryv hereby incorporates by reference the preceding paragraphs as if fully restated herein.

29. Defendant Scott published statements on his Plantation Monthly website and social media accounts on Instagram, Twitter, and Tumblr suggesting that Thryv is supporting the alleged exploitation of a former slave plantation known as the Lombardy Plantation.

30. Defendant has made multiple inflammatory statements about Thryv CEO Joseph Walsh and his alleged ownership of the Lombardy Plantation, including allegations that ownership of slave plantations "runs in the family" and attempts to link Mr. Walsh to alleged slave ownership by purported ancestors and previous property owners.

31. Defendant Scott goes so far as to claim that by doing business with Thryv, businesses are supporting the exploitation of former slave plantations. Scott pairs these unfounded and explosive allegations with information about how slaves at nearby plantations were treated, implicitly claiming that the same was true of the slaves at Lombardy Plantation.

32. However, as previously discussed herein, these statements are not supported by the actual recorded history of the Lombardy Plantation. Instead, they are an intentional misrepresentation of the facts designed to defame Thryv and its CEO.

33. Defendant Scott knew, or should have known, that his accusations were false when he made them.

34. Defendant Scott published the statements in writing, linking them to LinkedIn profiles of Thryv's officers, and on Plantation Monthly's publicly available Twitter, Instagram, and Tumblr accounts. Each of these are public forums.

35. Plaintiff has reason to believe that Scott has made and/or will make these statements verbally in a public forum too.

36. Defendant Scott's statements are not privileged.

37. Scott made these statements to incite public hatred, contempt, ridicule, fear, and concern about Plaintiff and its business activities, relationships, and affiliations, and to injure Plaintiff's business, goodwill, and relationships with current and prospective customers and business partners.

38. Scott's statements also undermine investor confidence in Thryv and its leadership and negatively impact the willingness of investors to invest in its parent company. Defendant Scott's false statements have caused injury to Thryv by inducing investors, potential investors, customers, stock analysts, and potential customers and others not to do business with Thryv and forcing Thryv to counter these false statements.

39. Defendant Scott made these statements with actual malice and intent to cause damage to Thryv and its reputation among investors and the public in an attempt to gain leverage in the lawsuit filed by LSWS.

40. Defendant Scott's statements have injured, and will continue to injure, Plaintiff's reputation.

41. Defendant Scott's statements constitute defamation per se and/or per quod.

42. As a direct and proximate result of these acts by Defendant, Plaintiff has suffered damages in an amount to be determined at trial.

43. Further, Plaintiff will continue to suffer irreparable harm that cannot be adequately compensated with an award of damages. Accordingly, Plaintiff is entitled to and seeks injunctive relief from Defendant's defamatory statements.

## VI.
## SECOND CAUSE OF ACTION- FALSE LIGHT INVASION OF PRIVACY

44. Thryv hereby incorporates by reference the preceding paragraphs as if fully restated herein.

45. Defendant Scott has publicly made accusations against Thryv and its CEO implying that Plaintiff was engaged in offensive conduct in connection with the Lombardy Plantation.

46. Scott's false and misleading statements have unreasonably placed Thryv in a false light before the public, including its present and prospective customers.

47. Defendant Scott made false and misleading claims about Thryv, its CEO, and the Lombardy Plantation intentionally in order to put Plaintiff in a highly offensive false light.

48. Defendant Scott had knowledge, or acted in reckless disregard, as to the falsity of the statements he publicized about Plaintiff and as to the false light in which his statements placed Plaintiff.

49. Defendant's actions were intended to, and had the effect of, harming Plaintiff's privacy interests.

50. As a direct and proximate result of these acts by Defendant Scott, Plaintiff has suffered damages in an amount to be determined at trial.

51. Further, Plaintiff will continue to suffer irreparable harm that cannot be adequately compensated with an award of damages. Accordingly, Plaintiff is entitled to and seeks injunctive relief from Defendant's false light invasion of privacy.

## VII.
## THIRD CAUSE OF ACTION- HARASSMENT UNDER K.R.S. § 525.070, § 525.080 AND §446.070

52. Thryv hereby incorporates by reference the preceding paragraphs as if fully restated herein.

53. It is unlawful harassment under KRS § 525.070 for any person to engage in course of conduct or repeatedly commit acts which alarm or seriously annoy such other person and which serve no legitimate purpose, with intent to intimidate, harass, annoy, or alarm another person.

54. It is unlawful harassment under KRS § 525.080 for any person to communicate with a person, anonymously or otherwise, by any form of electronic or written communication in a manner which causes annoyance or alarm and serves no purpose of legitimate communication, with intent to intimidate, harass, annoy, or alarm another person.

55. KRS § 446.070 provides a civil remedy for injuries sustained by reason of a violation of any Kentucky Revised Statute.

56. Defendant Scott's conduct constitutes unlawful harassment under KRS § 525.070 and § 525.080.

57. Defendant Scott's various false statements and accusations made against Thryv directly and through its CEO, inflammatory and misleading statements about the Lombardy Plantation and its alleged connection to Thryv, and his ongoing harassment of Thryv's officers, affiliates, and employees constitutes a course of conduct that incites fear, alarm and seriously annoys Thryv, its affiliates, officers, and employees.

58. Defendant Scott's conduct is not protected under the constitution and is intended to harass, annoy, and alarm Thryv and its officers, affiliates, shareholders, directors, and representatives of Thryv, customers, and the general public.

59. Defendant's conduct served, and continues to serve, no legitimate purpose.

60. It is in the public interest to restrict Defendant Scott from making false accusations and misleading statements about Thryv, its relationship to the Lombardy Plantation, its business relationships, and from harassing and threatening Thryv, its affiliates, officers, and employees.

61. As a direct and proximate result of these acts by Defendant Scott, Plaintiff has suffered damages in an amount to be determined at trial.

62. Further, Plaintiff will continue to suffer irreparable harm that cannot be adequately compensated with an award of damages. Accordingly, Plaintiff is entitled to and seeks injunctive relief from Defendant's harassment.

## VIII.
## FOURTH CAUSE OF ACTION- TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

63. Thryv hereby incorporates by reference the preceding paragraphs as if fully restated herein.

64. Thryv has valid business relationships with over 400,000 customers in addition to vendors, affiliates, employees, and third-party businesses.

65. Thryv expects to form additional business relationships with prospective customers, vendors, and third-party business partners.

66. Defendant Scott's actions have interfered with, and will continue to interfere with, Plaintiff's current and future business relationships.

67. Defendant Scott's motives behind his malicious interference with Thryv's business relationships are improper.

68. As a direct and proximate result of these acts by Defendant, Plaintiff has suffered damages in an amount to be determined at trial.

69. Further, Plaintiff will continue to suffer irreparable harm that cannot be adequately compensated with an award of damages. Accordingly, Plaintiff is entitled to and seeks injunctive

relief from Defendants' improper interference with Plaintiff's current and prospective relationships.

## IX.
## FIFTH CAUSE OF ACTION FOR PUNITIVE DAMAGES UNDER KRS § 411.184

70. Thryv hereby incorporates by reference the preceding paragraphs as if fully restated herein.

71. At all times relevant herein, Defendant Scott acted with oppression, fraud or malice.

## X.
## PRAYER

Plaintiff Thryv, Inc. requests judgment in its favor and against Defendant Clark Scott as follows:

    a. Thryv's actual damages in excess of $75,000.00 in an amount to be determined at trial;

    b. Pre-judgment and post-judgment interest thereon to the extent permitted by law;

    c. Reasonable attorneys' fees and expenses as allowed by law;

    d. Costs of suit; and

    e. Such other and further relief, whether general or special, at law or in equity, to which Thryv may be justly entitled and which the Court deems appropriate.

Dated:  June 5, 2023

Respectfully submitted,

By   /s/  Judy Webb Sipes
Judy Webb Sipes
Kentucky Bar No. 85742
webbsipes@aol.com
260 Franklin Rd
Big Clifty, Kentucky 42712
Tel. (270) 242-0354
Fax (270) 242-0364

ATTORNEY FOR PLAINTIFF THRYV, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered ECF users for this case.

 /s/  Judy Webb Sipes
Judy Webb Sipes