# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **THRYV, INC.,**<br><br>    Plaintiff,<br><br>v.<br><br>**CLARK SCOTT,**<br><br>    Defendant. | **Case No. 3:23-cv-00284-BJB**<br>*Electronically filed* |

## PLAINTIFF THRYV, INC.'S MOTION FOR JUDGMENT AGAINST DEFENDANT CLARK SCOTT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Thryv, Inc. ("Thryv") submits this Motion for Judgment Against Defendant Clark Scott ("Scott") and requests this Court enter an order rendering judgment against Scott and permanently enjoining Scott from publishing, or encouraging others to publish, false, misleading, and/or harassing statements about Thryv and its officers, directors, employees, and their family members, and any relationship they have to Lombardy Farm (the "Motion").

The Motion is supported by the declaration of Shellie Terry, Senior Manager Content Strategy for Thryv, attached hereto at Exhibit A (the "Terry Decl."), the declaration of Richard A. Abraham, Director of Digital Forensics of Harbor Litigation Solutions, attached hereto as Exhibit B (the "Abraham Decl."), and the declaration of Judy Webb Sipes, Counsel for Thryv, attached hereto as Exhibit C (the "Sipes Decl.")

# I.
# INTRODUCTION

As noted in the Complaint, after commencing litigation against Thryv in Texas for the alleged breach of contractual relationships with his companies[1], Scott has now taken to the internet with the express intention of harassing Thryv, its Chief Executive Officer Joseph Walsh, Mr. Walsh's family, and Thryv board members based on false claims that Mr. Walsh is exploiting slave ownership through his alleged ownership of a former slave plantation.  To this end, Scott has made hundreds of false and defamatory public statement about Thryv and its CEO's relationship with the alleged former slave plantation.  Scott's conduct serves no legitimate purpose and is intended to intimidate, harass, annoy and/or alarm Thryv and its CEO.

Not only are these allegations false, but they are clearly designed to coerce Thryv to concede to Scott's demands for millions of dollars in alleged damages in his Texas lawsuit against Thryv.  This is the second time Scott has attempted this strategy of making false comments and statements online to try to influence Thryv's litigation strategy and damage its reputation and customer relationships.

Having been enjoined in the previous action filed by Thryv to stop his harassment[2], Scott is now making personal, inflammatory statements about Mr. Walsh's alleged ownership of a former slave plantation and claiming that Thryv's 400,000 customers are supporting the alleged

---

[1] *LetsSeeWhatSticks, LLC v. Thryv, Inc.*, Case No. 236-326406-21, pending in the District Court for the 236th Judicial District, Tarrant County, Texas, and in it, LetsSeeWhatSticks, LLC ("LSWS"), a limited liability company owned and controlled by Clark Scott, purports to represent the claims of Hello Earth, another company owned and controlled by Scott, and others in asserting a claim for breach of contract in connection with its participation in Thryv's Affiliate Program (the "LSWS Lawsuit").

[2] The court in *Thryv, Inc. v. Hello Earth, LLC, and Clark Scott*, Case No. 141-329335-21, in the District Court for the 141st Judicial District, Tarrant County, Texas, a related case to the LSWS Lawsuit, entered a temporary restraining order against Scott ordering him to remove internet posts wherein he falsely claimed that Thryv had failed to comply with SEC disclosure requirements in connection with the LSWS Lawsuit.  Scott was also enjoined from threatening the officers and directors of Thryv in connection with these false claims, from making public statements about the business relationship between his company and Thryv, and from publicly making any misrepresentations about Thryv or its business.

exploitation of slavery by purchasing services from Thryv, which "probably pays Walsh's salary and increases his wealth through Stock and salary."  Scott also links his false and defamatory statements regarding Mr. Walsh to Mr. Walsh's LinkedIn profile, which is maintained by Thryv.

These statements are false and misleading and are part of a pattern and practice of making false claims in order to unlawfully harass and damage Thryv's business interests, employees and their family members, and affiliates.  Despite being involved in ongoing litigation with Thryv in Texas, Scott has chosen not to respond to Thryv's claims in this case.  Thryv seeks a judgment prohibiting Scott from continuing to use his website and other public on-line forums to damage the reputation of Thryv in the marketplace.

## II.
## PROCEDURAL HISTORY

1. On June 5, 2023, Thryv, Inc. filed its Complaint against Scott, alleging Defamation, Libel, and Slander per se and per quod; False Light Invasion of Privacy; Harassment under K.R.S. § 525.070, § 525.080 and § 446.070; Tortious Interference with Prospective Relations; and for Punitive Damages under K.R.S. § 411.184. *See* Dkt. 1.

2. On June 14, 2023, Scott was served with a summons and a copy of the complaint (Dkt. 1) by personal service. A copy of the return of service was filed with the Court. *See* Dkt. 10. Scott did not file a responsive pleading or otherwise defend the suit.

3. On August 4, 2023, the Court granted Thryv's motion for entry of default and directed the Clerk to enter default. *See* Dkt. 12.  The Clerk entered the default that day. *See* Dkt. 13.

4. Thryv now asks the Court to render judgment against Scott.

## III.
## ARGUMENT AND AUTHORITIES

**A.  The Court Should Render a Default Judgment Against Scott Because He Failed to File a Responsive Pleading**

5. A court may render a default judgment against a party who has not filed a responsive pleading or otherwise defended the suit. *See* Fed. R. Civ. P. 55(a), (b)(2).

6. The Court should render a default judgment against Clark Scott because Scott did not file a responsive pleading within 21 days after June 14, 2023, the date of service. Fed. R. Civ. P. 12(a)(1)(A)(i).

7. Scott is not a minor or incompetent person. Fed. R. Civ. P. 55(b)(2).

8. Scott is not in military service. *See* 50 U.S.C. § 3931(b)(1). *See* Sipes Decl. and the attached certificate from the Department of Defense's Manpower Data Center showing that Scott has not served in the military.

9. Thryv seeks damages in an amount of $150,000.

**B.  The Court Should Permanently Enjoin Scott**

10. Thryv seeks entry of a permanent injunction against Scott prohibiting him from, directly or indirectly, publishing public false, misleading, and/or harassing statements about Thryv and its officers, directors, employees, and their family members, and any relationship they have to Lombardy Farm.

11. Entry of an injunction is necessary in order to safeguard Thryv's reputation in the marketplace and its legitimate business interests. Without such relief, Thryv's investor relationships and business interests will be imminently and irreparably harmed by Scott's conduct. Moreover, Scott's behavior represents a consistent pattern and practice of defaming individuals and business entities for self-serving purposes. Indeed, Scott has been sued at least two other times for making false and defamatory statements online, *see, e.g.,* Complaint, *Ricci v. Scott et al.*, No.

3:23-cv-63-CHB (W.D. Ky. Feb. 8, 2023), (ECF No.1), Complaint, *Assetmark Financial Holdings, Inc. & AssetMark , Inc. v. Scott et. al,* No. 3:22-cv-175-RGJ (W.D. Ky. March 25, 2022)(ECF No. 1), and is being sued for harassing another company through a baseless lawsuit, *see* First Amended Complaint *LDG Land Holdings, LLC* v. *Schwartz et al.,* No. 21-CI-006703 (Ky. 30th Cir. Feb. 16, 2023).

12. Additionally, Scott has continued to make false statements about Thryv and Mr. Walsh on his website and social media websites, and has even escalated his bad behavior. *See* Abraham Decl., ¶s 6-7; Terry Decl. ¶s 5-7. Currently, he is constantly replying to individuals' and major media outlets' tweets with these statements. Terry Decl. ¶ 6. He has also edited his Plantation Monthly Website to include multiple references to Mr. Walsh and his role as Thryv's CEO in a seeming attempt to draw attention to his website should Mr. Walsh—or Thryv—be searched through search engines. *Id.* at ¶ 5. Given Scott's past and present behavior, there appears to be no end in sight to these misleading and harassing statements without the appropriate injunctive relief.

13. If Thryv's application for injunctive relief is not granted, Thryv will be imminently and irreparably harmed because once investors, potential investors, clients, and potential clients have seen the false posts, website, and related false statements about Thryv, Thryv will not be able to restore those relationships, its reputation, the value of the company overall, or be fully compensated for the associated losses. Terry Decl. ¶s 14-17. News travels fast online and companies are easily attacked by posts seeking to make false claims. If Scott is allowed to continue with his campaign of false and defamatory posts, the damage to Thryv will be irreparable. *Id.*

14. Thryv has no adequate remedy at law because the damage to its investor relations and its reputation with potential clients cannot be calculated and will be irreparable.

15. Furthermore, Thryv has no adequate remedy at law for this kind of ongoing reputational damage.

16. Specifically, based on the foregoing allegations and evidence, Thryv requests that a permanent injunction be entered prohibiting Scott as follows:

   a. From publishing, or encouraging others to publish, false, misleading, and/or harassing statements about Thryv and its officers, directors, employees, and their family members, and any relationship they have to Lombardy Farm;

   b. from contacting or communicating with, or encouraging others to contact or communicate with, Thryv's officers, directors, employees, and their family members about Lombardy Farm, or about false, misleading, and/or harassing statements about Thryv and its officers, directors, or employees;

   c. From publicly making any misrepresentation regarding Thryv or its business; and

   d. Ordering Scott to delete all false posts and public statements made concerning Thryv, including, but not limited to, the posts identified in Thryv's Complaint, the Plantation Monthly website and any versions thereof and provide the Court and Thryv with evidence of such deletion.

17. "Once the default has been entered, the well-pleaded facts of the complaint relating to liability must be accepted as true." *Long John Silver's LLC v. GKRM Inc.*, No. 3:20-CV-00488-GNS, 2021 WL 3910320, at *2 (W.D. Ky. Aug. 31, 2021) (quoting *O'Neal v. Nationstar Mortg.*, No. 1:07CV505, 2009 WL 1795305, at *3 (S.D. Ohio June 23, 2009)). Moreover, "[i]n the case of a default judgment, the court need not hold an evidentiary hearing to grant a permanent injunction, because there are no factual issues in dispute." *Id.* at *5 (quoting *I Love Juice Bar*

*Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *5 (M.D. Tenn. Aug. 14, 2020)). Because the factual allegations in Thryv's Complaint are accepted as true at the default judgment stage, and Scott has not otherwise refuted Thryv's claims, Thryv has succeeded on the merits.

18. Considering the balance of the hardships between the parties, a remedy in equity is warranted. The harm faced by Thryv outweighs the harm that would be sustained by Scott if the injunction were granted. Specifically, Thryv's reputation and business relationships will continue to be damaged by Scott's false and intentionally misleading statements, which outweighs any alleged harm to Scott by a prohibition of publicly publishing such statements. This is evidenced, in part, by Scott's complete failure to respond.

19. Issuance of a permanent injunction will not adversely affect the public interest, which is better served by protecting Thryv and others from defamatory statements.

## IV.
## THRYV'S DAMAGES

20. As a recovery for its causes of action for defamation, libel, and slander, Thryv is entitled to damages totaling at least $150,000.00. Compl. ¶¶ 28-43.

21. As an initial matter, Scott's defamatory statements are fairly categorized as defamation per se. First, Scott has failed to answer Thryv's Complaint and to controvert facts pleaded regarding his defamatory, libelous and slanderous statements. More specifically, Scott has not denied Thryv's factual statements that Scott is asserting that "by doing business with Thryv, businesses are supporting the exploitation of former slave plantations," *id.* ¶ 31, or Thryv's contention that Scott's statements are defamation per se. *Id.* ¶41. Second, under Kentucky law, "[s]tatements classified as defamatory per se include those which attribute to someone a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with

his business, trade, profession, or office." *Gilliam v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006). Because Scott's false statements are incompatible with Thryv's business, trade, and profession, Scott's statements are properly categorized as defamation per se.

22. "If a communication can be labeled per se defamatory, recovery is permitted without proof of special damages because injury to reputation is presumed and the words are actionable on their face." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (citation and internal quotation marks omitted), *as corrected* (Apr. 7, 2015). As a result of Scott's per se defamatory statements, injury to Thryv is presumed, and the Court may award presumed damages.

23. As to the amount of presumed damages, Thryv seeks $150,000.00. This is a fair estimate of Thryv's presumed damages based on the *at least* 100 separate social media posts and comments Scott made to damage Thryv's reputation.[3] Terry Decl. ¶s 5-14. This $150,000.00 presumed damages award will adequately compensate Thryv at a rate of $1,500 per false statement. In addition, this award is further appropriate in view of the heinous nature of each of the false statements, the false statements' sensitive subject matter, the number of views Scott's posts have received, *id.* ¶s 5-14, and Scott's apparent intent to destroy Thryv's reputation by generating a groundswell of public anger and disgust with Thryv. Accordingly, $150,000.00 is an appropriate presumed damages award under these circumstances.

## V.
## CONCLUSION

24. Because Scott has failed to timely answer Thryv's Complaint, Thryv asks the Court to grant this motion and render a judgment for Thryv in the amount of $150,000.00.

---

[3] Thryv's presumed damages figure of $150,000.00 is further appropriate given that it was calculated based on 100 separate social media posts and/or comments, but, in fact, Scott has made *more* than 100 posts or comments online. As such, Thryv's presumed damages estimate errs on the side of fairness.

25. Thryv requests a permanent injunction against Scott, enjoining him from publishing false, misleading, and harassing statements about Lombardy Farm and Thryv's relationship to it. Thryv also requests an Order from the Court requiring Scott to delete all false posts and public statements made concerning Thryv, including, but not limited to, the posts identified in Thryv's Complaint, the Plantation Monthly website and any versions thereof and provide the Court and Thryv with evidence of such deletion.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Thryv respectfully requests the Court grant this motion and:

a) render judgment against Defendant Clark Scott;

b) enter a judgment for damages in the amount of $150,000.00;

c) permanently enjoining Clark Scott from publishing, or encouraging others to publish, false, misleading, and/or harassing statements about Thryv and its officers, directors, employees, and their family members, and any relationship they have to Lombardy Farm;

d) permanently enjoining Scott from contacting or communicating with, or encouraging others to contact or communicate with, Thryv's officers, directors, employees, and their family members about Lombardy Farm, or about false, misleading, and/or harassing statements about Thryv and its officers, directors, or employees;

e) ordering Scott to delete all false posts and public statements made concerning Thryv, including, but not limited to, the posts identified in Thryv's Complaint, the Plantation Monthly website and any versions thereof and provide the Court and Thryv with evidence of such deletion; and

f) grant such other and further relief, in law or equity, to which Thryv may show itself justly entitled

Dated:  August 11, 2023

          Respectfully submitted,

By    */s/  Judy Webb Sipes*
      Judy Webb Sipes
      Kentucky Bar No. 85742
      webbsipes@aol.com
      260 Franklin Rd
      Big Clifty, Kentucky 42712
      Tel. (270) 242-0354
      Fax (270) 242-0364

      ATTORNEY FOR PLAINTIFF THRYV, INC.